# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:14-CV-168
# BANKRUPTCY CASE NO. 13-10808

| | |
|---|---|
| IN RE: ) ) EVA CHRISTINE THIEL ) Debtor, ) _____ ) ) WIMER & ASSOC., PC d/b/a ) ASHEVILLE LAW GROUP, ) Appellant, ) ) vs. ) ) EVA CHRISTINE THIEL, ) Appellee. ) _____ ) | **MEMORANDUM AND OPINION** |

Wimer & Associates, PC ("Wimer") appeals the Bankruptcy Court's Order dismissing its Adversary Proceeding No. 14-01016 brought against Eva Christine Thiel ("Thiel"). The Bankruptcy Court determined that Thiel's debt to Wimer was dischargeable under Chapter 7 of the Bankruptcy Code and thus Wimer's non-dischargeability Complaint failed to state a claim upon which relief can be granted. Thiel cross appeals the Bankruptcy Court's Order denying her recovery of her legal fees and expenses incurred in defending the Adversary Proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

The allegations set forth in the Complaint in the Adversary Proceeding (AP) below, taken in the light most favorable to Wimer, are as follows. In July, 2012, Thiel hired Wimer to represent her in the prosecution of a claim of gender discrimination against her former employer. [AP Doc. 1 at 4].[1]  No written fee agreement was executed by the parties but Thiel agreed to pay Wimer on an hourly basis. [Id.]. Wimer obtained a right to sue letter from the EEOC on behalf of Thiel and thereafter filed a civil action against Thiel's former employer. [Id.]. That action was stayed and Thiel's claims were submitted to arbitration in December 2012. [Id.]. Throughout the course of representation, Wimer sent Thiel monthly invoices, which she usually paid within 30 days, until June, 2013. [Id.].

In June, 2013, Thiel informed Wimer that she was having financial difficulties and asked Wimer if it would represent her on a contingency fee basis instead of the hourly basis. [Id. at 5]. Wimer declined. Thiel then informed Wimer that she could only pay $2,000 per month going forward for legal fees. [Id.]. Wimer's AP Complaint then alleges:

---

[1] Citations to the record in Bankruptcy Case No. 13-10808 have the prefix letter B before the document number referenced on the Docket Sheet. Citations to the record in the Adversary Proceeding Case No. 14-01016 have the prefix letters AP before the document number referenced. Citations to the record in this Court contain the relevant document number referenced with no prefix letter.

2

> 20. This statement by Defendant [Thiel] came at a time when Defendant already owed the firm substantial legal fees, and at a time when the necessary legal work was going to increase as the case progressed toward a hearing.
>
> 21. Plaintiff indicated to Defendant that without concrete assurances from Defendant for payment of existing and future legal invoices, Plaintiff would have to withdraw from representing Plaintiff.
>
> 22. Defendant represented to Plaintiff that Defendant held significant funds in a retirement account, and that she would withdraw funds from her retirement account to pay the outstanding fees and future invoices.
>
> 23. Based on this representation, Plaintiff continued to represent Defendant in the litigation.

[AP Doc. 1 at 5].

In November, 2013, the arbitrator found against Thiel on her claims and awarded her no recovery. [Id. at 7]. From June until December, 2013, Thiel made payments to Wimer totaling only $3,941.70. [Id.]. In December, 2013, Wimer sent Thiel its final invoice for services rendered indicating an amount outstanding of $60,118.09. [Id. at 7; 9].

On December 30, 2013, Thiel filed a voluntary Chapter 7 Petition. [B Doc. 1]. Pertinent to this appeal, Thiel claimed two individual retirement accounts held by T. Rowe Price as property exempt from her Bankruptcy Estate and sought discharge of her debt to Wimer. [B Doc. 1 at 13]. On

3

May 14, 2014, Wimer timely filed an AP Complaint contesting the dischargeability of Thiel's debt owed to it. [AP Doc. 1].

Thiel moved to dismiss Wimer's Adversary Proceeding pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [AP Docs. 4; 5]. The Bankruptcy Court heard Thiel's motion on June 17, 2014, and dismissed Wimer's action by Order entered June 18, 2014.[2] [AP Doc. 11]. Wimer

---

[2] Wimer also filed an objection to the claimed exemption of the retirement accounts in the underlying bankruptcy proceeding. [B Doc. 20]. The Bankruptcy Court overruled that objection on June 18, 2014. [B Doc. 25]. In its brief, Wimer argues that this Court should reverse that Order overruling its objection. [Doc 5 at 4]. Rule 8002(a) of the Federal Bankruptcy Rules provides that a Notice of Appeal must be filed within 14 days of "the entry of the ... order ... appealed from." An appellant's failure to take any step – "*other than timely filing a notice of appeal*" – will not affect the validity of the appeal. Rule 8001(a) (emphasis added). The critical act, therefore, is the timely filing of a notice of appeal particularly identifying the order appealed from. "This rule is jurisdictional and must be strictly construed." In re Starcher, 255 B.R. 292, 293 (S.D.W.Va. 2000) (citing Smith v. Dairymen, Inc., 790 F.2d 1107 (4th Cir. 1986)). "Furthermore, an appellant must file a separate notice of appeal for each bankruptcy court final order or judgment with which the appellant disagrees." In re Rozerk Farms, Inc., 139 B.R. 463 (E.D.Mo. 1992). In this matter, Wimer's original Notice of Appeal (which was for some reason filed twice) listed two separate Orders of the Bankruptcy Court Wimer wished to contest: (1) the Order dismissing Wimer's AP Complaint and (2) the Order overruling Wimer's objection to Thiel's claim of exemptions. [AP Docs. 12; 13]. Wimer's duplicative appeal notice prompted the Bankruptcy Court to issue a "Notice of Defective Entry or Filing" to Wimer directing that "[a] separate Notice of Appeal needs to be filed in the base case, 13−10808, relating to the Order Overruling Objection to Claim of Exemption." [AP Doc. 14]. Despite the Bankruptcy Court's clear instruction, Wimer filed no second Notice of Appeal in the underlying Bankruptcy case "relating to the Order Overruling Objection to Claim of Exemption." Instead, Wimer amended its original Notice of Appeal to reference only the Bankruptcy Court's Order dismissing the Adversary Proceeding, deleting the reference to the Order overruling Wimer's objection to Thiel's claim of exemptions. [AP Doc. 15]. Given that Wimer has filed no Notice of Appeal separately referencing the Bankruptcy Court's Order overruling Wimer's objection to Thiel's claim of exemptions, Wimer has failed to perfect an appeal from that Order. The Court, therefore, is without jurisdiction to review the Bankruptcy Court's June 18, 2014, Order overruling Wimer's objection to Thiel's claim that her IRAs are exempt property. [B Doc.

now appeals the Bankruptcy Court's Order dismissing the adversary proceeding. [AP Doc. 15]. On July 9, 2014, the Bankruptcy Court granted Thiel a discharge under 11 U.S.C. § 727. [B Doc. 26]. Thiel cross appealed the Bankruptcy Court's denial of her request for attorneys' fees and costs by Notice filed July 11, 2014. [AP Doc. 20].

## STANDARD OF REVIEW

This Court's review of the Bankruptcy Court's Order dismissing Wimer's Adversary Proceeding, a purely legal determination, will be de novo. In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992).[3]

The Court reviews a Rule 12(b)(6) dismissal of a claim in a complaint focusing only on the legal sufficiency of the complaint, and "accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff[.]" Brockington v. Boykins, 637 F.3d 503, 505 (4th

---

25]. To the extent that Wimer's original notice of appeal or its brief seeks review of the order regarding the exemption issue, such appeal is dismissed.

[3] Neither party contends that Wimer's fraud claims asserted in the AP Complaint are Stern claims – claims designated for final adjudication in the Bankruptcy Court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter. Stern v. Marshall, 131 S. Ct. 2594 (2011). To the extent that Wimer's fraud claims are Stern claims, they are not "core" claims and are "related to a case under Title 11" since Wimer's position is that Thiel's IRA money should not be protected from a creditor (Wimer) as an exempt asset of Thiel's bankruptcy estate. Executive Benefits Insurance Agency v. Arkison, 134 S. Ct. 2165 (2014). Accordingly, because this Court is reviewing de novo a purely legal determination made by the Bankruptcy Court, any error of the Bankruptcy Court in entering a final order, as opposed to a memorandum and recommendation, is cured by this Court's independent and complete review of the Bankruptcy Court's decision. Id. at 2175.

Document    Page 6 of 19

Cir. 2011). To survive a motion to dismiss made pursuant to Rule 12(b)(6), a party's allegations, treated as true, are required to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). On the one hand, the claim need not contain overly "detailed factual allegations[.]" Id. at 555. On the other hand, however, "a formulaic recitation of the elements of a cause of action will not do[,]" nor will mere labels and legal conclusions suffice. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The mere possibility that the defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Twombly, 550 U.S. at 570. The touchstone, therefore, is plausibility and not possibility.

## DISCUSSION

One of the purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). The benefit conferred upon a Chapter 7 debtor, who discloses and surrenders all appropriate assets, is a discharge by the Bankruptcy Court

Case 1:14-cv-00168-MR    Document 8    Filed 02/24/15    Page 6 of 19

and the ability to begin her financial life anew. The Bankruptcy Act presumes a Chapter 7 debtor's pre-petition obligations should be dischargeable, and that she should be discharged under 11 U.S.C. § 727, unless the debtor engaged in certain prohibited conduct. In this case, Wimer asserts Thiel engaged in prohibited conduct, specifically fraud, and therefore the pre-petition legal fees she incurred and owed to Wimer should not be dischargeable. Wimer advanced two non-dischargeability theories before the Bankruptcy Court in its AP Complaint, one under 11 U.S.C. § 523(a)(2) and one under 11 U.S.C. § 523(a)(4). The Court will address these theories in turn.

I.   Section 523(a)(2) - Fraud

Pursuant to 11 U.S.C. § 523(a)(2)(A), a general discharge pursuant to § 727 of the bankruptcy code will "not discharge an individual debtor from any debt … for … services … to the extent obtained by false pretenses, a false representation, or actual fraud[.]" Id.; Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 219 (4th Cir. 2007). There is no question that Wimer has pleaded facts showing that Thiel's debt to Wimer is for legal services it rendered for her. [AP Doc. 1]. In order to plead a claim that would overcome the dischargeability of Thiel's debt owed to it, however, Wimer must allege facts that permit the Court to draw the

7

reasonable inference that Thiel perpetrated a fraud upon Wimer, as the term "fraud" is used in § 523.  [See AP Doc. 1 at 9 ("The foregoing acts by Defendant defrauded and caused monetary damage to Plaintiff….")].

In order to examine Wimier's fraud allegations, the Court must first discern the definition of the "fraud" that Wimer must prove to make a claim under § 523(a)(2).  Wimer cites to cases from the North Carolina appellate courts in arguing the proper fraud definition.  [Doc. 4 at 9 ("In North Carolina, the elements of fraud are…")].  While the broad principle that "state law determines the rights and obligations of debtors and creditors when the Bankruptcy Code fails to supply a federal rule is well recognized[,]" Tidewater Finance Co. v. Kenney, 531 F.3d 312, 319 (4th Cir. 2008), that principle is usually germane only with regard to property, ownership, and security interests underlying a claim. Lewis v. Manufacturers National Bank, 364 U.S. 603, 609 (1961) (uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy).  The Supreme Court has made clear, however, that a distinction exists between the standard of proof that a creditor must satisfy in order to establish a valid *claim* against a bankrupt estate and the

8

standard that a creditor who has established a valid claim must still satisfy in order to avoid *dischargeability*. "The validity of a creditor's claim is determined by rules of state law." Grogan v. Garner, 498 U.S. 279, 283 (1991). "Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." Id. at 284. For this reason Wimer is incorrect that North Carolina law supplies the proper fraud definition under the Code's dischargeability section 523(a)(2).

Thiel argues that the Bankruptcy Court's decision in In re Hill, 425 B.R. 766 (W.D.N.C. 2010) supplies the correct fraud definition. [Doc. 5 at 5]. The court in Hill relied upon the Fourth Circuit's decision in Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126 (4th Cir. 1999), which in turn relied upon the Supreme Court's decision in Field v. Mans, 516 U.S. 59 (1995). When faced with the issue of having to construe the reliance component of section 523(a)(2)(A)'s fraud definition in Field, the Supreme Court looked to "the most widely accepted distillation of the common law of torts … the Restatement (Second) of Torts (1976)[.]" Field, 516 U.S. at 70. Likewise, the Fourth Circuit in Biondo, 180 F.3d at 134, drew upon the Restatement's fraud definition, as did the Bankruptcy Court in Hill, 425 B.R. at 775. But not all frauds are created equal, as Field, Biondo, and Hill illustrate. Thiel focuses on fraud perpetrated by the misrepresentation of a

9

past or current fact. [Doc. 5 at 5]. That, however, is not what is alleged in Wimer's AP Complaint. There it is asserted that Thiel made a *promise* to pay Wimer attorneys fees in the future from funds then held in her IRA. [AP Doc. 1 at 8-9]. That, of course, is not a fraud; it is a promise, a contract. "Appellant further alleged that when Respondent made these promises, Respondent 'had no present intention of paying Appellant from her retirement funds[.]' " [Doc. 4 at 16 (citing AP Complaint at ¶¶ 35-36)]. The Restatement (Second) of Torts provisions regarding the representation of intent to fulfill a future promise, therefore, will inform the Court's analysis as to whether such conduct falls within the non-dischargeability provisions of § 523.

>    The Restatement, in pertinent part, states:
>
>    One who fraudulently makes a representation of … intention … for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for the pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Restatement (Second) of Torts § 525 (1976). Addressing the salient point in this appeal, § 530(1) explains that a "representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Accord, Hoyle v. Bagby, 253 N.C. 778, 781, 117 S.E.2d 760, 762 (1961) (for a future promise to be fraudulent, the intent not

10

to pay must have existed in the defendant's mind at the time he made the promise which induced the plaintiff to do the work). In the AP Complaint, Wimer alleges as follows:

> 34. Upon information and belief, in July 2013, [Thiel] knew that her retirement funds would be protected from her creditors under state law and exempt from her bankruptcy estate in the event she entered bankruptcy.
>
> 35. Upon information and belief, contrary to her representation to Plaintiff, Defendant had no present intention of paying Plaintiff from her retirement funds.
>
> * * * * * * * * * *
>
> 46. Upon information and belief, Defendant never intended to pay Plaintiff from her retirement funds, a material fact that she failed to disclose to Plaintiff.
>
> * * * * * * * * * *
>
> 48. Upon information and belief, Defendant planned in the summer of 2013, and perhaps earlier, to file bankruptcy and attempt to escape her obligations if she lost the case.

[AP Doc. 1 at 6; 7 (emphasis added)].

The problem with these allegations is that they are conclusory. This is a particular problem in light of the nature of the claim. If such conclusory allegations were sufficient, then any breach of contract claim could be converted into a fraud claim by simply asserting that the defendant never intended to perform. This is precisely the sort of pleading Twombly and Iqbal deem insufficient. Such "naked assertions devoid of further factual

11

enhancement" contribute nothing to the sufficiency of the AP Complaint.[4] Iqbal, 556 U.S. at 678 (internal quotation marks and alteration omitted). In order to make such a future-promise fraud claim, a plaintiff must allege sufficient facts that would present a plausible claim that the defendant actually had no intent to perform at the time the promise was made. The Restatement also addresses this in the commentary to the section concerning Misrepresentation of Intention:

> *d. Proof of intention not to perform agreement.* The intention that is necessary to make the rule stated in [§ 530(1)] applicable is the intention of the promisor when the agreement was entered into. The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into.

Restatement (Second) of Torts § 530(1), comment. *d.* (1976). This commentary is also consistent with the redemptive policy of bankruptcy. The Fourth Circuit has explained that, when considering the applicability of an exception to discharge, courts construe the exception narrowly "to

---

[4] It is noted that even the conclusory allegations regarding future promise fraud are made "on information and belief." This is a lawyer shorthand expression of uncertainty, and implies that the Plaintiff has no factual basis underlying the conclusory allegations to put before the Court. See e.g., Southfield Ltd. P'ship v. Flagstar Bank, 727 F.3d 502 (6th Cir. 2013) (allegations of disparate treatment of similarly situated people made "upon information and belief" insufficient to sustain plausible basis that such people exist). As such, these "information and belief" allegations should be disregarded in an Iqbal analysis, much as the conclusory allegations must be.

12

protect the purpose of providing debtors a fresh start." <u>Foley & Lardner v. Biondo (In re Biondo )</u>, 180 F.3d 126, 130 (4th Cir. 1999). Therefore, in order to bring an adversary proceeding challenging the dischargeability of a debt in bankruptcy, the creditor cannot simply allege the debt (i.e. the promise to pay) and then make the conclusory assertion that there was never any intent to pay. If such were allowed, it would serve to make virtually all debts non-dischargeable (or at least render the discharge questionable), and thus thwart the underlying purpose of the bankruptcy proceeding.

There is yet another sound reason for drawing no inference of fraud from the simple fact of Thiel's nonperformance and holding Wimer to its pleading burden:

> If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action of deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect. If the recipient wishes to have legal assurance that the intention honestly entertained will be carried out, he must see that it is expressed in the form of an enforceable contract, and his action must be on the contract.

Restatement (Second) of Torts § 530(1), comment. *b.* (1976). Here, Wimer did not formalize Thiel's promise into any enforceable contract. Irrespective of any such contract, Wimer could have required Thiel to obtain the funds from her IRAs to make immediate payment, refusing to

13

further represent her if she chose not to do so. It did none of these things. Instead, it challenged the dischargeability of her debt in bankruptcy with an AP Complaint containing conclusory assertions of fraud buttressed by no factual support. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 644. Such "threadbare" conclusions are not entitled to the assumption of truth. Id. Wimer's AP Complaint, therefore, does not plausibly allege any future promise fraud by Thiel. Accordingly, the Bankruptcy Court's Order dismissing Wimer's nondischargeability action premised upon 11 U.S.C. § 523(a)(2) is affirmed.

    II.    <u>Section 523(a)(4) – Fiduciary Duty</u>

Pursuant to 11 U.S.C. § 523(a)(4), a general discharge under the bankruptcy code will "not discharge an individual debtor from any debt … for fraud or defalcation while acting in a fiduciary capacity[.]" Id. Wimer alleged in its AP Complaint that Thiel became Wimer's fiduciary upon her promise to pay Wimer's fees in the future from money contained in her IRAs.

> 96.   To induce Plaintiff to continue providing legal services to Defendant, Defendant promised to utilize her retirement monies to pay for Plaintiff's legal services.

> 97. In so doing, Defendant assumed a fiduciary duty to safeguard and protect the monies in her retirement funds for the benefit of Plaintiff.

[AP Doc. 1 at 12]. Having become a fiduciary in this way, according to Wimer, Thiel's debt to Wimer is nondischargeable due to her fraud or defalcation while acting in this fiduciary capacity. [Doc 4 at 14].

Wimer's theory of nondischargeability under § 523(a)(4) so pleaded is without merit. The Supreme Court addressed and resolved this theory long ago. In Davis v. Aetna Acceptance Co., 293 U.S. 328 (1934), Davis, the debtor, operated a business selling cars financed by Aetna. For each vehicle acquired by Davis, he executed and delivered to Aetna four documents: a promissory note, a chattel mortgage, a bill of sale, and a "trust receipt, agreeing to hold [the vehicle] as the property of the respondent for the purpose of storage, and not to sell, pledge, or otherwise dispose of it except upon consent in writing[.]" Id. at 330. Davis would thereafter sell the cars in his showroom to customers "without concealment and in the ordinary course of business, though [sometimes] without written consent." Id. Even though he might have sold a vehicle without Aetna's approval, he would remit the proceeds thereafter to Aetna. Id. On August 3, 1929, Davis sold an automobile. As in the past, Davis promised to pay Aetna from the proceeds of the sale to retire the debt but did not keep his

15

promise. Instead, he filed a petition in bankruptcy on September 13, 1929. Id. Aetna sought the nondischargeability of Davis' debt "created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity[,]" the language of the Bankruptcy Code in effect at the time and the precursor to § 523(a)(4). Specifically, Aetna argued that Davis' auto debt could not be discharged, "his liability arising, it is said, from his fraud or misappropriation while acting in a fiduciary capacity." Id. at 330. The Court, speaking through Justice Cardozo, rejected Aetna's argument.

The Court began by noting that "the statute speaks of technical trusts, and not those which the law implies from the contract." Id. (citation omitted). In ruling that the dischargeability exception at issue was inapplicable to constructive trusts, the Court explained:

> It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto. In the words of Blatchford, J.: "The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created."

Id. (citation omitted). In holding that Davis was not a fiduciary as contemplated by the Code, the Court illustrated its conclusion with the following example: "A mortgagor in possession before condition broken is

not a trustee for the mortgagee within the meaning of this statute, though he has charged himself with a duty to keep the security intact." Id. at 334.

Turning to the facts of this case, there was no preexisting express or technical trust in place before Thiel committed her alleged wrong. Therefore, no fiduciary relationship necessarily existed to bring Thiel's debt within the § 523(a)(4) exception. At most, Theil was a debtor who bound herself by covenant to pay Wimer's legal fees from money on deposit in her IRAs, not a trustee charged to preserve Wimer's funds. Wimer's AP Complaint, therefore, fails to state a claim upon which relief can be granted. See, e.g., Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992) (the mere existence of a debtor-creditor relationship between the parties does not create a fiduciary relationship); United Virginia Bank v. Air-Lift Assocs., Inc., 79 N.C. App. 315, 322, 339 S.E.2d 90, 94 (1986) (same, applying Virginia law, and explaining further that parties to a contract do not thereby become each others' fiduciaries). Accordingly, the Bankruptcy Court's Order dismissing Wimer's nondischargeability action premised upon 11 U.S.C. § 523(a)(4) should be affirmed.

III. <u>Thiel's 11 U.S.C. § 523(d) Attorney's Fees Claim</u>.

Section 523(d) of the Bankruptcy Code states as follows:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

<u>Id.</u>

In order to prevail on a motion for attorney's fees under § 523(d), a debtor must prove: (1) that the creditor requested a determination of the dischargeability of the debt, (2) the debt is a consumer debt, and (3) the debt was discharged. Once the debtor establishes these elements, the burden shifts to the creditor to prove that its actions were substantially justified or that special circumstances make an award unjust. <u>In re Machuca</u>, 483 B.R. 726, 733 (9th Cir. BAP 2012); <u>In re Strausbaugh</u>, 376 B.R. 631, 636 (Bankr. S.D. Ohio 2007); <u>In re Stine</u>, 254 B.R. 244, 249 (9th Cir. BAP 2000); <u>In re McCarthy</u>, 243 B.R. 203, 209 (1st Cir. BAP 2000).

Thiel cross appeals the Bankruptcy Court's denial of her request for attorneys' fees and costs. [AP Doc. 20]. The Bankruptcy Court's Order [AP Doc. 11] directing that "Defendant and Plaintiff are to be responsible for their own legal expenses incurred during this litigation[,]" was entered June

18, 2014, almost three weeks before the Court discharged Thiel on July 9, 2014. [B Doc. 26]. As such, the Bankruptcy Court's Order denying Thiel's request for attorney's fees and costs pursuant to § 523(d) was premature. The third element under § 523(d) had not yet been established. Because this Court sits as an appellate court in bankruptcy, this issue must be remanded to the Bankruptcy Court for a determination based on the present record.

## ORDER

**IT IS, THEREFORE, ORDERED** that Bankruptcy Court's June 18, 2014, Order dismissing Wimer's Complaint in Adversary Proceeding No. 14-01016 [AP Doc. 11] is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the appeal of the Bankruptcy Court's June 18, 2014, Order overruling the objection to the exemption [B Doc. 25] is **DISMISSED**.

**IT IS FURTHER ORDERED** that the portion of the Bankruptcy Court's June 18, 2014, Order denying Thiel attorney's fees is **VACATED and REMANDED** for further consideration by the Bankruptcy Court.

**IT IS SO ORDERED**.

Signed: February 24, 2015

Martin Reidinger
United States District Judge